UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA
Newport News Division

UNITED STATES OF AMERICA

v.                                    Criminal No. 4:20cr1

JAMAR GREEN,

        Defendant.

## OPINION AND ORDER

This matter is before the Court on pro se Defendant Jamar Green's ("Defendant") "Motion to Dismiss No. 2." ECF No. 69.  The Motion seeks dismissal of the indictment primarily on speedy trial grounds.  For the reasons discussed below, the Court **DENIES** the Motion.

### I. FACTUAL BACKGROUND AND PROCEDURAL HISTORY

On July 17, 2018, Defendant was charged with conspiracy to distribute and possess with intent to distribute controlled substances (21 U.S.C. §§ 841, 846) and use of a firearm in furtherance of a drug trafficking crime (18 U.S.C. § 924(c)(1)) in a multi-defendant, second superseding indictment returned in Case No. 4:17cr111.[1]  No. 4:17cr111, ECF No. 180.  On August 3, 2018, an arrest warrant was executed, and Defendant, who was serving a term of imprisonment with the Virginia Department of Corrections, was brought before this Court pursuant to a writ of habeas corpus

---

[1] Including Defendant, the indictment named nine defendants.

ad prosequendum.   No. 4:17cr111, ECF Nos. 197, 199, 220, 221.   The Court determined that Defendant qualified for court-appointed counsel and appointed Criminal Justice Act Panel attorney ("CJA attorney") Timothy J. Quick.   No. 4:17cr111, ECF Nos. 220, 222.

On August 8, 2018, Defendant appeared for a detention hearing and arraignment.   No. 4:17cr111, ECF No. 231.   During the hearing, Mr. Quick moved to withdraw due to a conflict of interest.   The Court granted the motion and continued the detention hearing and arraignment to August 10, 2018.   In the interim, the Court appointed CJA attorney Andrew Behrns to represent Defendant.

At the August 10, 2018 detention hearing and arraignment, Defendant waived his right to an immediate detention hearing, pleaded not guilty, and requested a trial by jury.   No. 4:17cr111, ECF Nos. 234, 236.   Due to the complexity of the case and in the interest of justice, the Court, pursuant to 18 U.S.C. § 3161(h)(7), set a trial date of April 30, 2019, well outside the statutory seventy-day speedy trial period.   No. 4:17cr111, ECF No. 234; see 18 U.S.C. § 3161(c)(1), (h)(7).   The parties concurred in the Court's judgment that the complexity of the case warranted a trial date outside the speedy trial period.

On October 10 and 11, 2018, the Court received pro se letter motions from Defendant stating that he wanted to "re-invoke [his] speedy trial time clock" given that the complexity of the case "ha[d] nothing to do with [him]," and requesting that the Court

appoint new counsel.  No. 4:17cr111, ECF Nos. 261, 262.  Mr. Behrns subsequently filed a motion to withdraw as Defendant's counsel, indicating that Defendant refused to meet with him at Western Tidewater Regional Jail ("WTRJ"), where Defendant is being held, to discuss the case.  No. 4:17cr111, ECF No. 264.  The Court held a hearing on the three motions on November 5, 2018.  No. 4:17cr111, ECF No. 274.  During the hearing, Defendant conferred with Mr. Behrns and agreed to withdraw his motion for new counsel[2]; but Defendant persisted in his objection to a trial date outside the speedy trial period.  The Court noted Defendant's objection but reaffirmed its finding that the case was complex pursuant to 18 U.S.C. § 3161(h)(7) and preserved the original trial date of April 30, 2019.  Id.  On February 8, 2019, Defendant filed another pro se letter motion seeking to remove Mr. Behrns as his attorney, which Defendant withdrew approximately one week later.  No. 4:17cr111, ECF Nos. 301, 305.

On March 12, 2019, the Government filed a third superseding indictment in the case, expanding the timeframe of the underlying drug conspiracy and naming a new defendant.[3]  No. 4:17cr111, ECF

---

[2] Mr. Behrns likewise withdrew his motion to withdraw as Defendant's counsel. No. 4:17cr111, ECF No. 274.

[3] Despite the addition of a defendant, the third superseding indictment named a total of eight defendants.  Before the Government returned the third superseding indictment, one of the defendants named in the second superseding indictment entered into a plea agreement with the Government and another was dismissed from the case.  See No. 4:17cr111, ECF Nos. 269, 341.

No. 314.  This indictment further charged additional offenses against certain defendants, including a third offense against Defendant for attempted witness tampering (18 U.S.C. § 1512).[4]  Id.

Less than a week later, Mr. Behrns filed a motion to withdraw as counsel.  No. 4:17cr111, ECF No. 336.  In the motion, Mr. Behrns indicated that he had received multiple letters from Defendant wherein Defendant expressed concerns with Mr. Behrns' representation and stated that he no longer wished to communicate with Mr. Behrns.  Id.  Although Mr. Behrns attempted to meet with Defendant to address these concerns, Defendant reportedly refused to meet with him.  Id.  Given this breakdown in their relationship, the Court granted the motion to withdraw on March 19, 2019, No. 4:17cr111, ECF No. 339, and appointed CJA attorney Adam Carroll.

On March 25, 2019, one of Defendant's co-defendants, Alex Burnett, who the Government later described as the "primar[y]" target of its investigation, No. 4:17cr111, ECF No. 400, at 5:19-10:13, moved for a continuance due to a substitution of counsel two weeks prior and such counsel's need for time to review the nearly three terabytes of discovery in the case.  No. 4:17cr111, ECF Nos. 342, 343.  The Court granted the continuance the same day but reserved the previous April 30, 2019 trial date for a status conference with the parties and their counsel to discuss a new

---

[4] This indictment also modified Defendant's § 924(c) charge as to the date and location of the alleged crime.  Id.

trial date.   No. 4:17cr111, ECF No. 344.   At that status conference, Defendant's counsel relayed to the Court that Defendant "would like a Speedy Trial," but Mr. Carroll also stated that he personally did not "have any particular issues" with a continuance and that a trial within the timeframe desired by Defendant "may not be necessarily possible" due to the substantial amount of discovery in the case – even though such discovery dealt primarily with other defendants.   No. 4:17cr111, ECF No. 400, at 32:14-33:1.   After giving counsel for each party an opportunity to speak, the Court set a new trial date of January 7, 2020.   No. 4:17cr111, ECF Nos. 355; 400, at 37:10-11.   Defendant thereafter mailed a pro se letter objecting to the new trial date on speedy trial grounds.   No. 4:17cr111, ECF No. 356.

On October 8, 2019, Defendant, with the assistance of counsel, filed a motion to proceed pro se.   No. 4:17cr111, ECF No. 376. After conducting a hearing, the Court denied the motion by written Order on October 16, 2019, finding that "Defendant's invocation of his right to self-representation was not made expressly, knowingly, and intelligently."   No. 4:17cr111, ECF Nos. 380, 381. Mr. Carroll then filed a motion to withdraw as counsel on October 21, 2019, stating that his efforts to meet and review discovery with Defendant were unavailing.   No. 4:17cr111, ECF No. 383.   The Court held another hearing and denied the motion to withdraw by

written Order on November 5, 2019.  No. 4:17cr111, ECF Nos. 395, 396.

On January 6, 2020, one day before trial was set to begin, the Government moved to dismiss the third superseding indictment against Defendant without prejudice.  No. 4:17cr111, ECF No. 488. The Court granted the motion on the same day prior to receiving a response from Defendant.  No. 4:17cr111, ECF No. 489.  Two days later, the Government re-indicted Defendant in the instant case (4:20cr1) through a stand-alone indictment charging only Defendant.  ECF No. 1.  In addition to the three offenses charged in the third superseding indictment in Case No. 4:17cr111, Defendant is now charged with a second attempted witness tampering offense, possession with intent to distribute a controlled substance (21 U.S.C. § 841(a)(1)), and obstruction of justice (18 U.S.C. § 1503).  Id.  The Government's decision to dismiss the third superseding indictment in Case No. 4:17cr111 and re-indict Defendant in the present case came shortly after one of Defendant's co-defendants, Alex Burnett, reached a plea agreement with the Government on January 2, 2020, and reportedly provided both incriminating and exonerating information to the Government concerning Defendant.[5]  No. 4:17cr111, ECF Nos. 400, at 5:19-10:13; 480; 481; 492, at 3.

---

[5] Several other co-defendants also entered into plea agreements with the Government in the months leading up to the dismissal of the third superseding indictment against Defendant in January 2020.

Defendant, through counsel, filed an objection to the dismissal without prejudice and moved the Court to convert the dismissal into one with prejudice. No. 4:17cr111, ECF Nos. 492, 493. The Court denied the motion, finding that "there [was] no 'case' or 'controversy' presently pending" in light of the dismissal. No. 4:17cr111, ECF No. 495, at 4. However, the Court further went on to explain that because there was "no indication of bad faith on the part of the Government," the Court had no discretion to deny the Government's motion to dismiss without prejudice. Id. at 1-2. The Court explicitly informed Defendant, although, that he could "challenge the Court's decision to dismiss the indictment without prejudice at a later stage should [he] subsequently be convicted of the charges that were dismissed." Id. at 5 n.2.

On January 9, 2020, Defendant came before the Court for his initial appearance, arraignment, and detention hearing on the instant indictment. ECF No. 4. At the hearing, the Court reappointed Mr. Carroll, and Defendant waived his right to an immediate detention hearing, pleaded not guilty, and requested a trial by jury, which was scheduled for February 18, 2020. Id. Over the next week and a half, Defendant mailed several pro se letters styled as motions and notices. ECF Nos. 9 to 18. The Court struck the improper pro se motions as Defendant was

represented by counsel.[6]  ECF Nos. 16, 19; see United States v. Hammond, 821 F. App'x 203, 207 (4th Cir. 2020) (unpublished) ("[A] district court is under no obligation to consider a defendant's pro se motion when he is represented by counsel.").

On January 22, 2020, Mr. Carroll moved to withdraw as Defendant's counsel.  ECF No. 20.  In his motion, Mr. Carroll stated that he had met with the Government to review new discovery materials and in the process discovered that another client in an unrelated case "is a material and necessary witness" regarding the newer attempted witness tampering charge against Defendant.  Id. at 1.  The Court granted the motion at a hearing on January 30, 2020, and appointed CJA attorney Scott Hallauer.  ECF No. 35.  Mr. Hallauer, with Defendant's full support, moved for a continuance and requested a four-week extension of the discovery deadline, both of which the Court granted.  Id.  The parties agreed to a new trial date of May 12, 2020.

With the arrival of the COVID-19 pandemic, the undersigned Chief Judge issued a District-wide Order on March 13, 2020, suspending all criminal jury trials for approximately one month. No. 2:20mc7, ECF No. 2.  The Court issued additional Orders in April, May, and June 2020, ultimately suspending criminal jury

---

[6] Defendant filed several pro se motions and notices in Case No. 4:17cr111 as well.

trials through September 14, 2020.[7]  No. 2:20mc7, ECF Nos. 12, 16, 20.

Shortly after the Court's March 13, 2020 Order, Defendant mailed a letter to the Court directed at Mr. Hallauer, expressing his displeasure with Mr. Hallauer's representation and asking him to withdraw as counsel.  ECF No. 47.  Mr. Hallauer heeded Defendant's request and moved to withdraw on April 9, 2020.  ECF No. 51.  In that motion, Mr. Hallauer represented that, despite his best efforts, Defendant refused to communicate with him.  Id. As such, Mr. Hallauer believed that the attorney/client relationship had broken down beyond repair.  Id.  While that motion was pending, Defendant filed two motions to proceed pro se.  ECF Nos. 56, 58.  The Court held a hearing on July 23, 2020, and granted all three motions.  ECF Nos. 61, 62.  However, over Defendant's objection, the Court directed that Mr. Hallauer remain in the case as standby counsel to help facilitate Defendant's review of the voluminous discovery materials.  ECF No. 61.

In August 2020, Defendant received a new trial date of October 6, 2020.  However, as explained in this Court's previous Order, WTRJ, where Defendant is currently being held, experienced a COVID-19 outbreak in September.  ECF No. 96.  In light of that outbreak

---

[7] As stated below, these Orders were accompanied by ends-of-justice findings, excluding the corresponding delay under the Speedy Trial Act, which the Court specifically finds applicable to the facts of this case for the reasons stated in such Orders.  See 18 U.S.C. § 3161(h)(7).

and the fact that Defendant, now proceeding pro se, had not yet had the opportunity to review all relevant discovery, the Court attempted to conduct a remote video conference hearing to address the matter with Defendant.  However, Defendant indicated that he would not consent to the hearing shortly after it began, thus bringing the video conference hearing to an abrupt end.  ECF No. 95.  Therefore, the Court issued an Order on October 2, 2020, continuing trial to January 4, 2021, the earliest available date for a courtroom retrofitted for mid-pandemic trials and approximately twenty-nine months after Defendant was arraigned on the second superseding indictment in Case No. 4:17cr111.[8]  ECF No. 96.

## II. DISCUSSION

Defendant's Motion seeks dismissal on five grounds: (1) violation of the Speedy Trial Act; (2) violation of the Sixth Amendment right to a speedy trial; (3) unnecessary delay in bringing Defendant to trial, pursuant to Federal Rule of Criminal Procedure 48(b)(3); (4) judicial estoppel; and (5) the absence of an "injured party." ECF No. 69.  The Court addresses each in turn.

---

[8] The Court indicated, however, that Defendant's trial will occur sooner if an opening becomes available, Defendant has reviewed all relevant discovery materials, and Defendant has had sufficient opportunity to prepare for trial.  ECF No. 96.

**A. Speedy Trial Act**

Title 18, section 3161 of the United States Code requires that

> the trial of a defendant charged in an information or indictment with the commission of an offense shall commence within seventy days from the filing date (and making public) of the information or indictment, or from the date the defendant has appeared before a judicial officer of the court in which such charge is pending, whichever date last occurs.[9]

18 U.S.C. § 3161(c)(1).  However, the statute excludes from this seventy-day period any period of delay associated with certain events.  For example, § 3161(h)(7) excludes any period of delay resulting from a continuance granted by a judge based on "findings that the ends of justice served by [continuing the case] outweigh the best interest of the public and the defendant in a speedy trial."[10]  Id. § 3161(h)(7)(A).  Among the enumerated factors that a court may consider in determining whether to grant such a continuance are (1) "[w]hether the failure to grant such a continuance in the proceeding would . . . result in a miscarriage

---

[9] The Supreme Court clarified that "the date the defendant has appeared before a judicial officer of the court in which such charge is pending" is the date of the arraignment.  United States v. Tinklenberg, 563 U.S. 647, 650 (2011); see also United States v. Lynch, 726 F.3d 346, 352 (2d Cir. 2013) (stating that arraignment constituted defendant's "first appearance" for speedy trial purposes); United States v. Young, 528 F.3d 1294, 1295 (11th Cir. 2008) ("The Speedy Trial Act requires that criminal defendants be tried within seventy days of the later of indictment or arraignment." (citing 18 U.S.C. § 3161(c)(1))).

[10] In such circumstances, however, the judge must "set forth, in the record of the case, either orally or in writing, its reasons for finding that the ends of justice served by the granting of such continuance outweigh the best interests of the public and the defendant in a speedy trial."  Id. § 3161(h)(7)(A).

of justice"; (2) "[w]hether the case is so unusual or so complex, due to the number of defendants [or] the nature of the prosecution, . . . that it is unreasonable to expect adequate preparation for pretrial proceedings or for trial itself within the [applicable] time limits"; and (3) "[w]hether the failure to grant such a continuance . . . would deny counsel for the defendant or the attorney for the Government the reasonable time necessary for effective preparation, taking into account the exercise of due diligence."  Id. § 3161(h)(7)(B)(i)-(ii), (iv).

Also excluded from the seventy-day period are any periods of delay "resulting from proceedings concerning the defendant," including the filing of any pretrial motions.  Id. § 3161(h)(1). More specifically, the statute excludes "delay resulting from any pretrial motion, from the filing of the motion through the conclusion of the hearing on, or other prompt disposition of, such motion," id. § 3161(h)(1)(D), as well as "delay reasonably attributable to any period, not to exceed thirty days, during which any proceeding concerning the defendant is actually under advisement by the court," id. § 3161(h)(1)(H).  The Supreme Court clarified the interplay of these two provisions in Henderson v. United States, 476 U.S. 321 (1986), noting a critical distinction between the Speedy Trial Act's treatment of pretrial motions that require a hearing and those that do not.  As neatly summarized by the Fourth Circuit,

12

> [w]here a hearing is required, subparagraph ([D])
> excludes the entire period from the filing of the motion
> to the conclusion of the hearing on that motion,
> regardless of whether any delay in holding the hearing
> was "reasonably necessary." Once the court has held the
> hearing and received any post-hearing submissions from
> the parties that it needs for proper disposition of the
> motion, the court takes the motion "under advisement"
> and subparagraph ([H]) excludes up to 30 additional days
> thereafter, up to and including the date on which the
> court finally disposes of the motion. If the pretrial
> motion requires no hearing, [subparagraph] ([D])
> excludes the period from the filing of the motion to the
> time the court receives all the papers it reasonably
> expects. Once the court has received the papers, the
> motion "is actually under advisement" and subparagraph
> ([H]) excludes up to 30 additional days thereafter, up
> to and including the date on which the court finally
> disposes of the motion.[11]

United States v. Parker, 30 F.3d 542, 546 (4th Cir. 1994)

(footnotes omitted) (citing Henderson, 476 U.S. at 326-31).

Notably, for purposes of § 3161(h)(1), a motion to dismiss

predicated on a Speedy Trial Act violation "is treated as any other

pretrial motion." United States v. Stoudenmire, 74 F.3d 60, 63

(4th Cir. 1996).

Of particular import in this case, the Speedy Trial Act also

takes into account "the well-established principle that defendants

who are charged in the same criminal conspiracy should be tried

together." United States v. Reavis, 48 F.3d 763, 767 (4th Cir.

1995); accord United States v. Ford, 88 F.3d 1350, 1361 (4th Cir.

1996) ("For reasons of efficiency and judicial economy, courts

---

[11] Prior to 2008, the statutory language now appearing in § 3161(h)(1)(D) and § 3161(h)(1)(H) appeared in § 3161(h)(1)(F) and § 3161(h)(1)(J), respectively. See Pub. L. No. 110-406, 122 Stat. 4294.

prefer to try joint-conspirators together."); *see also* United States v. Shealey, 641 F.3d 627, 633 (4th Cir. 2011) ("[T]here is a preference in the federal system for joint trials of defendants who are indicted together." (quoting Zafiro v. United States, 506 U.S. 534, 537 (1993))). Indeed, the Act explicitly excludes from the speedy trial period "[a] reasonable period of delay when the defendant is joined for trial with a codefendant as to whom the time for trial has not run and no motion for severance has been granted." 18 U.S.C. § 3161(h)(6). In other words, "time excludable for one defendant is excludable for all defendants."[12] United States v. Jarrell, 147 F.3d 315, 316 (4th Cir. 1998) (citing 18 U.S.C. § 3161(h)([6])). As such, "[a]ll defendants who are joined for trial generally fall within the speedy trial computation of the latest codefendant." Henderson, 476 U.S. at 323 n.2 (citing 18 U.S.C. § 3161(h)([6])); *see also* United States v. Dixon, 542 F. App'x 273, 278 (4th Cir. 2013) (unpublished per curiam) (finding that defendant's speedy trial clock began anew with superseding indictment that named additional defendants); United States v. Van

---

[12] Moreover, courts ordinarily will not grant a severance merely because one defendant is ready to proceed to trial before his codefendants. See, e.g., United States v. Curanovic, No. 1:17cr404, 2017 WL 4402452, at *2-3 (E.D.N.Y. Oct. 2, 2017) (recognizing the "strong" preference for joint trials of defendants indicted together and stating that "[s]peedy trial concerns generally will not suffice as a standalone basis for severance"); United States v. Dodt, No. 3:15cr213, 2019 WL 452772, at *2 (W.D.N.C. Feb. 5, 2019) (stating that "defendant's argument that he is now ready [for trial] and will not receive a fair trial unless the Court provides him with a trial immediately after he [is prepared to proceed] is of little persuasive value").

Smith, 530 F.3d 967, 972 (D.C. Cir. 2008) ("The Speedy Trial Act excludes delay attributable to resetting a defendant's speedy trial clock upon the addition of a co-defendant so that the government will not be forced to choose between prosecuting defendants separately and violating the Speedy Trial Act.").

Aside from reasonable delay attributable to co-defendants, it is also important to note the implications of additional charges brought after the speedy trial period has already commenced. As a general matter, where a criminal defendant has been charged and is awaiting trial, and the government thereafter either returns a superseding indictment or re-indicts the defendant after dismissing the previous indictment without prejudice, any offenses charged in the new indictment that were also charged in the previous indictment do not receive a new speedy trial period.[13] See Young, 528 F.3d at 1296 ("[N]either the filing of a superseding indictment, nor the dismissal of an original indictment followed by the filing of a new indictment, resets the speedy-trial clock [for offenses charged in the original indictment]." (citing 18 U.S.C. § 3161(h)([5]))); United States v. King, 483 F.3d 969, 972 (9th Cir. 2007) ("[T]he filing of a superseding indictment will not automatically reset the [Speedy Trial Act] clock where the new

---

[13] Although, if the government elects the latter course, the Speedy Trial Act expressly excludes "any period of delay from the date the charge was dismissed to the date the time limitation would commence to run as to the subsequent charge had there been no previous charge." 18 U.S.C. § 3161(h)(5).

indictment does not charge a new crime, but only corrects a defect in the original indictment."); United States v. Osteen, 254 F.3d 521, 525-26 (4th Cir. 2001) ("When an indictment is dismissed on the government's motion, and the defendant is thereafter re-indicted on identical charges, the seventy-day Speedy Trial Act period is calculated from the date of the first arraignment." (citing 18 U.S.C. § 3161(h)([5]))). Such a rule ensures that the government does not "circumvent[] the speedy trial guarantee." United States v. Bermea, 30 F.3d 1539, 1567 (5th Cir. 1994).

Conversely, to the extent the superseding or subsequent indictment charges new offenses that double jeopardy principles do not require to be joined with the original charges, see King, 483 F.3d at 972; United States v. Marshall, 935 F.2d 1298, 1302 (D.C. Cir. 1991), a new speedy trial period commences, but only as to those new charges. See United States v. Thomas, 726 F.3d 1086, 1090 (9th Cir. 2013) (holding that new, distinct charges "stand on their own and are subject to a new timing period" under the Speedy Trial Act); United States v. Alford, 142 F.3d 825, 829 (5th Cir. 1998) ("We see no logical basis for concluding that, when the government chooses to add in a superseding indictment charges that it is not required to join with the charges contained in the original indictment, it must bring the defendant to trial on the added charges within the time period remaining on the speedy trial clock applicable to the charges contained in the original

indictment."); United States v. Lattany, 982 F.2d 866, 872 n.7 (3d Cir. 1992) ("If the subsequent filing charges a new offense that did not have to be joined with the original charges, then the subsequent filing commences a new, independent speedy trial period.").

That is not to say that speedy trial periods associated with new charges are not themselves subject to tolling.  For example, an ends-of-justice continuance granted after the government has brought new charges would operate to toll both the original speedy trial clock and the new speedy trial clock.  See United States v. Hale, 685 F.3d 522, 537-38 (5th Cir. 2012).  Similarly, a tolling event arising prior to and remaining in effect at the time the government brings new charges likewise tolls the speedy trial period for the new charges.  See, e.g., United States v. Gonzales, 897 F.2d 1312, 1316-17 (5th Cir. 1990) ("The motions pending on the original charges toll the running of the speedy-trial clock for the new charges, regardless of when the clock begins to run for the new charges." (citing 18 U.S.C. § 3161(h)(1)([B]), ([D]))); United States v. Fabian, 798 F. Supp. 2d 647, 673 (D. Md. 2011) ("Although various cases state that a superseding indictment that adds new charges restarts the speedy trial clock with respect to the new charges, that does not necessarily mean that a court's prior determination that excluding time under the Act serves the 'ends of justice' does not apply to new counts charged in a

superseding indictment." (citations and internal quotation marks omitted)).  The Fourth Circuit has also held that because "joining multiple offenses against a single defendant is analogous to joinder of defendants" under 18 U.S.C. § 3161(6), any reasonable delay stemming from joinder of offenses should also be excluded "in order to end the 70-day period simultaneously for all counts," in accordance with "the traditional rules of severance."  United States v. Carey, 746 F.2d 228, 231 (4th Cir. 1984).

In the event of a violation of the Speedy Trial Act, the court "shall" dismiss the "information or indictment on motion of the defendant."  18 U.S.C. § 3162(a)(2).  Whether the indictment must be dismissed with prejudice or without prejudice, however, is a separate inquiry and turns on consideration of the factors outlined in § 3162(a)(2): "the seriousness of the offense; the facts and circumstances of the case which led to the dismissal; and the impact of a reprosecution on the administration of this chapter and on the administration of justice."  Id. § 3162(a)(2); see United States v. Williams, 665 F. App'x 290, 292-93 (4th Cir. 2016) (unpublished per curiam) ("Neither type of dismissal is 'the presumptive remedy for a Speedy Trial Act violation.'" (quoting United States v. Taylor, 487 U.S. 326, 332-35 (1988))).

### 1. Case No. 4:17cr111

As stated above, Defendant was first named in a second superseding indictment on July 17, 2018, in Case No. 4:17cr111,

alleging that Defendant participated in a conspiracy with co-defendants to distribute and possess with intent to distribute controlled substances and that Defendant used a firearm in furtherance of a drug trafficking crime. No. 4:17cr111, ECF No. 180. Defendant appeared for an arraignment and detention hearing on August 8, 2018. However, those proceedings were continued to August 10, 2018, due to a conflict regarding court-appointed counsel. Accordingly, the speedy trial seventy-day period ordinarily would have begun to run the following day, August 11, 2018. See 18 U.S.C. § 3161(c)(1); Stoudenmire, 74 F.3d at 63 (noting that "the day of the event that triggers the [Speedy Trial Act] clock . . . is not included in the calculation; the clock begins to run the following day"). However, during the August 10, 2018 proceedings, the Court found, pursuant to 18 U.S.C. § 3161(h), that the complexity of the case and the interest of justice warranted a trial date outside the seventy-day speedy trial period, a finding with which the parties agreed. No. 4:17cr111, ECF No. 234. Trial was thus scheduled for April 30, 2019. Id. As a result, the seventy-day period was immediately tolled such that all seventy days remained.

Defendant later requested in a September 20, 2018 pro se letter that the seventy-day period begin running on the basis that

the case's complexity "ha[d] nothing to do with [him]".[14]   No. 4:17cr111, ECF No. 261.   At a November 5, 2018 hearing, however, the Court reaffirmed its finding that the case was complex pursuant to 18 U.S.C. § 3161(h)(7) and preserved the April 2019 trial date. No. 4:17cr111, ECF No. 277.   Therefore, despite Defendant's letter, the speedy trial period remained tolled.

On March 12, 2019, the Government filed a third superseding indictment, adding both a new defendant and a third charge against Defendant for attempted witness tampering.   No. 4:17cr111, ECF No. 314.   The addition of a defendant in the charged drug conspiracy had the effect of resetting Defendant's speedy trial clock with respect to the two charges in the second superseding indictment. See Henderson, 476 U.S. at 323 n.2; Dixon, 542 F. App'x at 278. As such, the two original charges and the new charge were joined together under a single speedy trial period beginning March 13, 2019, the day after the third superseding was filed.[15]   However, this new period was immediately tolled by the Court's November 5,

_____

[14] That Defendant "re-invoke[d his] speedy trial time clock" did not reactivate the speedy trial period.   Indeed, not only did the Court's previous complexity finding remain in place, but Defendant's filing of that letter, as well as the October 7, 2018 motion for new counsel, also would have independently tolled the speedy trial clock through the date of the November 5, 2018 hearing, pursuant to 18 U.S.C. § 3161(h)(1)(D) and (H).

[15] Because it appears that Defendant was never arraigned on the third superseding indictment before re-indictment in Case No. 4:20cr1, the Court uses the date of the filing of the third superseding indictment to calculate the new speedy trial period.

2018 ends-of-justice continuance grounded in the complexity of the case.  See Fabian, 798 F. Supp. 2d at 673.

On March 25, 2019, the Court granted an additional continuance of the trial date upon the motion of co-defendant Alex Burnett, whose retained counsel had just entered the case and represented to the Court that he would be unable to review the extensive discovery in the case before the April 2019 trial date.  No. 4:17cr111, ECF Nos. 342, 343, 344.  After a status conference with the parties' counsel on April 30, 2019, the Court rescheduled trial for January 7, 2020.  No. 4:17cr111, ECF Nos. 355, 400.  Even though Defendant did not request it, this continuance operated to further toll Defendant's speedy trial clock.  As previously discussed, where a court grants a continuance because failure to do so "would deny counsel for the defendant . . . the reasonable time necessary for effective preparation," the Speedy Trial Act excludes the resultant period of delay from the speedy trial period.  18 U.S.C. § 3161(h)(7)(A), (B)(iv).  The Court granted Burnett's motion for continuance precisely for that reason, resulting in a period of delay excludable under the Speedy Trial

Act.[16]   And as a co-defendant whose case had not been severed,[17] the delay arising from the continuance was also excludable as to Defendant.  See 18 U.S.C. § 3161(h)(6); see also Jarrell, 147 F.3d at 316 (stating that "time excludable for one defendant is excludable for all defendants").   Consequently, at the time the Court granted the Government's motion to dismiss without prejudice the third superseding indictment in Case No. 4:17cr111 on January 6, 2020, zero days had elapsed on Defendant's speedy trial clock.

---

[16] Specifically, the Court granted the motion for continuance by docket entry, stating, "In light of the recent superseding indictment and the amount of discovery in this case, the Court grants the motion."  No. 4:17cr111, ECF No. 344.  Although that docket entry does not include an express ends-of-justice finding, the Court agreed with Burnett's motion and believed that failure to grant the motion would deprive Burnett's counsel "the reasonable time necessary for effective preparation," 18 U.S.C. § 3161(h)(7)(B)(iv), such that "the ends of justice served by [continuing the case] outweigh[ed] the best interest of the public and the defendant in a speedy trial," id. § 3161(h)(7)(A).  See Zedner v. United States, 547 U.S. 489, 506-07 (2006) (stating that the Speedy Trial Act requires that "findings must be made, if only in the judge's mind, before granting the [ends-of-justice] continuance," but that such findings may be put in the record at a later date provided that the judge does so "by the time the [judge] rules on a defendant's motion to dismiss"); see also United States v. Keith, 42 F.3d 234, 237 (4th Cir. 1994) ("[A] court may enter its ends of justice finding after it grants the continuance . . . if it is clear from the record that the court conducted the mandatory balancing contemporaneously with the granting of the continuance.").

[17] Although Defendant filed a pro se motion requesting a severance on October 20, 2019, No. 4:17cr111, ECF No. 385, the Court struck the motion because Defendant was represented by counsel, No. 4:17cr111, ECF No. 390.  Prior to that ruling, Defendant had been informed at least twice that the Court would entertain motions filed only by his counsel.  See No. 4:17cr111, ECF Nos. 333, 370.  Moreover, Defendant's counsel never moved for a severance, though he had several occasions to do so, including more than one in-person hearing. Cf. Medrano v. United States, No. 8:12cr14, 2017 WL 3234367, at *3 (D. Md. July 28, 2017) ("[C]hoosing whether to move for severance is a classic tactical decision properly left to counsel's discretion." (citing United States v. Chapman, 593 F.3d 365, 369 (4th Cir. 2010))).

As such, Defendant suffered no Speedy Trial Act violation in Case No. 4:17cr111.[18]

## 2. Case No. 4:20cr1

The Court further finds that there has not been a Speedy Trial Act violation when considering the instant indictment. As specified above, the Government's decision to dismiss the third superseding indictment against Defendant without prejudice in Case No. 4:17cr111 and re-indict Defendant in a stand-alone indictment in the present case appears to have stemmed from co-defendant Alex Burnett's decision to enter into a plea agreement with the Government four days earlier on January 2, 2020. See No. 4:17cr111, ECF Nos. 480, 481; see also No. 4:17cr111, ECF No. 493, at 2-3. The Government filed the new indictment on January 8, 2020, again charging Defendant with conspiracy to distribute controlled substances, possessing a firearm in furtherance of a drug trafficking crime, and attempted witness tampering. Although

---

[18] The Court makes two additional observations. First, Defendant's various pretrial motions – both those filed by him and those filed by counsel – would have independently operated to toll the speedy trial period to some extent. See 18 U.S.C. § 3161(h)(1)(D), (H). Second, Defendant's counsel never filed a motion to dismiss the indictment on the basis of a Speedy Trial Act violation, but even if he had and the Court found such a violation, that fact would not automatically entitle Defendant to a with-prejudice dismissal. Rather, the Court would have had to consider the factors listed in 18 U.S.C. § 3162(a)(2) (e.g., the seriousness of the offense, the facts and circumstances of the case leading to the dismissal, and the impact of a re-prosecution on the administration of justice) to determine whether a with-prejudice dismissal would have been appropriate. And if the Court found that such a dismissal was not warranted and thus dismissed the case without prejudice, the Government would have been free to re-indict Defendant on the same charges with a new speedy trial clock. See United States v. Thomas, 705 F.2d 709, 710-11 (4th Cir. 1983).

the attempted witness tampering charge is identical to that alleged in the previous indictment, the drug conspiracy and firearm offenses differ from their predecessors.  More specifically, the drug conspiracy charged in the new indictment is more limited in scope, and the firearm offense charged in the new indictment alleges a different date and location.  Nonetheless, the Court assumes in Defendant's favor that each of these three charges is "the same offense" alleged in the previous indictment within the meaning of 18 U.S.C. § 3161(h)(5) such that the speedy trial period as to these charges relates back to the filing date of the third superseding indictment in the previous case, March 13, 2019.  See 18 U.S.C. § 3161(h)(5); Osteen, 254 F.3d at 525-26.  Such an assumption, of course, has little practical effect as this speedy trial period remained tolled from its inception (i.e., the day after the filing of the third superseding indictment) through the arraignment on the instant indictment.  See 18 U.S.C. § 3161(h)(5) (stating that when the government dismisses a charge without prejudice and later brings the same charge, "any period of delay from the date the charge was dismissed to the date the time limitation would commence to run as to the subsequent charge had there been no previous charge" is excluded from the speedy trial period).

The present indictment also charges three new offenses: a second attempted witness tampering charge, possession with intent

to distribute controlled substances, and obstruction of justice. ECF No. 1.  Because there is no indication that these new charges were required to be joined with any of the other offenses under double jeopardy principles, such additional charges receive an independent speedy trial period.[19]   Again, however, from a practical standpoint, the two separate speedy trial periods were essentially on equal footing.  For that reason, the Court will discuss them herein in a single speedy trial clock analysis.

Defendant was arraigned on the instant indictment on January 9, 2020, with trial set to begin on February 18, 2020.  ECF No. 4. Beginning January 10, 2020, therefore, the speedy trial clock commenced.  But it did so for only one day as Defendant filed two motions – a motion to dismiss and a motion for grand jury transcripts – on January 11, 2020 (as well as a third motion on January 12, 2020), tolling the speedy trial period under 18 U.S.C. § 3161(h)(1)(D) and (H).  ECF No. 9, 10, 11; see Dixon, 542 F. App'x at 278 (finding that pretrial detainee's motion tolled speedy

---

[19] As to the possession with intent to distribute charge, the Fourth Circuit has observed that "[a] substantive crime and conspiracy to commit that crime are 'separate offenses' for purposes of the Double Jeopardy Clause . . . because an agreement to do an act is distinct from the act itself." United States v. Yearwood, 518 F.3d 220, 223 (4th Cir. 2008); see also United States v. Felix, 503 U.S. 378, 380-81 (1992) ("[P]rosecution of a defendant for conspiracy, where certain of the overt acts relied upon by the Government are based on substantive offenses for which the defendant has been previously convicted, does not violate the Double Jeopardy Clause.").  Accordingly, to the extent, if any, the conduct supporting the possession with intent to distribute charge is conduct that also supports the original drug conspiracy charge, double jeopardy principles did not require the two charges to be joined together in the same indictment.

25

trial clock beginning on the day the defendant delivered the motion to prison authorities for mailing rather than the day on which the court received it (citing <u>Houston v. Lack</u>, 487 U.S. 266, 276 (1988)).   On January 16, 2020, the Court struck those motions because Defendant was represented by counsel.  ECF No. 16.  The speedy trial clock resumed the following day and continued to run until January 22, 2020, when Mr. Carroll moved to withdraw as counsel – a total of five days.  ECF No. 20.  The Court held a hearing on and disposed of that motion on January 30, 2020; therefore, the speedy trial clock was tolled through that date. ECF No. 35; <u>see</u> 18 U.S.C. § 3161(h)(1)(D).

At the hearing, the Court granted Mr. Carroll's motion to withdraw and appointed Mr. Hallauer as Defendant's counsel. Because trial was scheduled to begin on February 18, 2020, less than three weeks away, Mr. Hallauer moved for a continuance.  ECF No. 35.  The Government, the Court, <u>and</u> Defendant agreed that a continuance was necessary to allow Mr. Hallauer adequate time to prepare for trial, so the Court granted the continuance.  <u>Id.</u>  In doing so, the Court determined that "the ends of justice served by the granting of such continuance outweigh[ed] the best interests of the public and the defendant in a speedy trial."  18 U.S.C. § 3161(h)(7)(A); <u>see</u> <u>id.</u> § 3161(h)(7)(B)(iv) (permitting ends-of-justice continuance where failure to grant continuance "would deny counsel for the defendant . . . the reasonable time necessary for

26

effective preparation, taking into account the exercise of due diligence"). Accordingly, the continuance was excludable under the Speedy Trial Act and Defendant's speedy trial clock remained tolled. See Zedner, 547 U.S. at 506-07; see also Keith, 42 F.3d at 240 (holding that "if a defendant affirmatively consents to a motion for a continuance and the reasons for the granting of that motion as garnered from the record are sufficient to support a finding that the ends of justice would be met by granting the motion, the defendant cannot take advantage of that discrete period of time covered by the continuance in asserting a violation of the Speedy Trial Act").

The parties agreed to a new trial date of May 12, 2020. On March 13, 2020, however, all criminal trials in this District were suspended for approximately one month as a result of the COVID-19 pandemic. ECF No. 96; see No. 2:20mc7, ECF No. 2. The Court made an ends-of-justice finding that such delay was excludable under the Speedy Trial Act. No. 2:20mc7, ECF No. 6. As the pandemic progressed, the Court issued additional Orders, each with an accompanying ends-of-justice finding, that ultimately suspended all criminal jury trials through September 14, 2020. No. 2:20mc7,

ECF Nos. 12, 16, 20.  Accordingly, such period of delay was excluded from Defendant's speedy trial clock.[20]

The Court rescheduled trial for October 6, 2020. Unfortunately, due to the unforeseen COVID-19 outbreak at WTRJ, the need for the pro se Defendant to review discovery, and the limited number of COVID-19 retrofitted courtrooms available, the Court rescheduled trial for January 4, 2021. ECF No. 96.  As the Court then noted,

> Defendant was assigned one of the earliest trial dates after criminal trials were resumed in this District, and the Court took all steps practicable to preserve such trial date. . . . Through no fault of Defendant, counsel for the Government, standby counsel, or anyone else involved in this case, proceeding to trial on October 6, 2020, is simply not possible due to the COVID-19 outbreak at Defendant's jail and the associated lockdown.

Id. at 12.  The Court thus concluded that the "ends of justice served by [continuing the trial date until January 4, 2021,] outweigh[ed] the best interest of the public and the Defendant in

---

[20] Defendant also filed several motions during this period, including a motion to proceed pro se, all of which would have otherwise had the effect of tolling Defendant's speedy trial clock, and to no insignificant extent. See 18 U.S.C. § 3161(h)(1)(D), (H).  The same holds true with respect to Defendant's more recent filings.  The Court wishes to stress to the pro se Defendant that although he is free to file pretrial motions, each motion he chooses to file may result in additional excludable time under the Speedy Trial Act.

a speedy trial."[21]   Id. at 13 (first alteration in original)
(quoting 18 U.S.C. § 3161(h)(7)(A)).   Consequently, Defendant's
speedy trial clock remains tolled to this date and will continue
to toll through the currently scheduled January 4, 2021 trial date.

In summation, only six days have elapsed under the statutory
speedy trial period(s) governing Defendant's charges.
Consequently, there has been no violation of the Speedy Trial Act,
and the Court **DENIES** the Motion on that basis.

### B. Sixth Amendment Speedy Trial

Turning to the constitutional right to a speedy trial, the
Sixth Amendment guarantees that "[i]n all criminal prosecutions,
the accused shall enjoy the right to a speedy and public trial."
U.S. Const. amend VI.   Unlike the Speedy Trial Act, which
establishes definite time periods, the Sixth Amendment right to a
speedy trial cannot be "quantified into a specified number of days
or months."   Barker v. Wingo, 407 U.S. 514, 523 (1972).

---

[21] In doing so, the Court recognized that "'ends of justice' continuances
cannot be predicated on 'general congestion of the court's calendar.'"   ECF
No. 96, at 13 (quoting 18 U.S.C. § 3161(h)(7)(C)).   But the Court was
explicit that such continuance was "not predicated on 'general congestion'
of the court's calendar and/or the unavailability of the assigned trial
judge due to a rigorous case schedule."   Id.   Rather, the continuance was
"necessitated by the fact that the nationwide pandemic has eliminated this
Court's ability to safely conduct any more than three simultaneous jury
trials in the region containing the geographically contiguous Newport News
and Norfolk Divisions of this Court."   Id. at 13-14.   "Attempting to try
the case at an earlier time using a courtroom and/or jury room that does
not permit jurors to stay at least six feet apart," the Court continued,
"would itself result in a miscarriage of justice as jurors' fears for their
safety would prevent them from devoting their full attention to the case
and would encourage them to rush to judgment rather than give Defendant the
fair public trial required by the United States Constitution."   Id. at 14.

Accordingly, the Supreme Court has declined invitations to define
with precision the contours of this right, warning that it "would
require th[e] Court to engage in legislative or rulemaking
activity, rather than in the adjudicative process to which we
should confine our efforts." Id. That being said, multiple
circuit courts have observed that "[i]t will be the unusual case
. . . where the time limits under the Speedy Trial Act have been
satisfied but the right to a speedy trial under the Sixth Amendment
has been violated." United States v. Bieganowski, 313 F.3d 264,
284 (1st Cir. 2002); accord United States v. Davenport, 935 F.2d
1223, 1238-39 (11th Cir. 1991).

To guide courts' assessments of Sixth Amendment speedy trial
claims, the Supreme Court has set forth a four-factor balancing
test for determining whether the Sixth Amendment's guarantee to a
speedy trial has been denied: "(1) whether the delay was uncommonly
long; (2) what the reason was for the delay; (3) whether the
defendant asserted his right to a speedy trial; and (4) whether
prejudice resulted to the defendant." Shealey, 641 F.3d at 634
(citing Barker, 407 U.S. at 530). If, after weighing the above
factors, a court determines that a defendant's constitutional
right to a speedy trial has been violated, the sole remedy is a
with-prejudice dismissal. United States v. Toombs, 574 F.3d 1262,
1274 (10th Cir. 2009) (citing Barker, 407 U.S. at 522); United

States v. Bilsky, 664 F.2d 613, 617 (6th Cir. 1981) (citing Strunk v. United States, 412 U.S. 434 (1973)).

A review of the four factors in this case leads to the conclusion that Defendant's Sixth Amendment right to a speedy trial has not been violated. The first factor, "whether the delay was uncommonly long," serves as "a threshold requirement because the defendant must establish that the length of the delay is at least presumptively prejudicial" in order to warrant consideration of the other three factors. United States v. Burgess, 684 F.3d 445, 451 (4th Cir. 2012) (citing Doggett v. United States, 505 U.S. 647, 651-52 (1992)). "The Supreme Court has observed that 'postaccusation delay [is] presumptively prejudicial at least as it approaches one year.'" Id. (alteration in original) (quoting Doggett, 505 U.S. at 652 n.1). In this case, Defendant will have experienced a delay of more than two years (approximately twenty-nine months) by the time he stands trial (assuming the current trial date of January 4, 2021), well over the one-year period that is presumed prejudicial. See United States v. Hall, 551 F.3d 257, 272 (4th Cir. 2009) (finding that a pretrial delay of two years in drug conspiracy prosecution warranted a further speedy trial analysis). As to the third factor, Defendant, to his credit, indicated fairly early on that he desired a speedy trial, although such request was not properly advanced through counsel and, at least initially, may have conflicted with defense counsel's

wishes.  Consequently, the first and third factors appear to favor Defendant.

However, the Court is persuaded that the other Barker factors – the reasons for the delay and resulting prejudice to Defendant - weigh heavily against a finding of a constitutional violation. Critically, for the first seventeen months, Defendant was named in successive multi-defendant indictments alleging a years-long drug conspiracy and involving roughly three terabytes of electronic discovery.  See id. (finding that two-year delay was justified in drug conspiracy case where "the prosecution was complicated, involving a serious, complex conspiracy charge that implicated multiple parties").  While a great deal of the discovery related to other defendants, and the case was at one point continued on the motion of one such defendant to permit his attorney sufficient time to review that discovery, the Court is mindful of "the well-established principle that defendants who are charged in the same criminal conspiracy should be tried together." Reavis, 48 F.3d at 767.  Furthermore, despite Defendant's claims to the contrary, there is simply no evidence that the Government deliberately delayed the trial for any improper purpose, such as to harass Defendant or hinder his defense.  Indeed, the Government's decision to dismiss the indictment and then re-indict Defendant came as co-defendant Alex Burnett (in addition to several other co-defendants) reached a plea agreement with the Government and

reportedly provided to the Government both incriminating and exculpatory information or evidence regarding Defendant.

After re-indictment in the instant case, Defendant's trial would have occurred as early as February 2020 (approximately eighteen months from the time he was arraigned on the second superseding indictment in Case No. 4:17cr111) but for the discovery of an attorney conflict that required the appointment of new counsel.  The onset of the COVID-19 pandemic and its impact on court operations, which affected all criminal defendants, as well as the unpredictable WTRJ COVID-19 lockdown further extended the delay by several additional months.  While Defendant is certainly not to blame for these events, neither is the Government.  See United States v. Brown, No. 1:19cr146, 2020 WL 5338441, at *4 (D. Md. Sept. 4, 2020) (finding no Sixth Amendment speedy trial violation despite delay in trial due to the COVID-19 pandemic); see also United States v. Arthur, No. 8:17cr253, 2020 WL 3073322, *7 (D. Md. June 10, 2020) ("The delay caused by exigent circumstances created by the COVID-19 pandemic cannot be weighed against the Government.").  The reasons for the delay in each case, whether considered individually or collectively, do not support a finding of a constitutional speedy trial violation.

Moreover, even in the absence of one or more of the above-described events that resulted in the delay of Defendant's trial, it is doubtful that Defendant would have received an expeditious

trial given his own pretrial conduct.   Indeed, throughout the course of both cases (4:17cr111 and 4:20cr1), Defendant, while represented by counsel, filed numerous pro se motions, including motions challenging the performance of his lawyers and motions to proceed pro se that resulted in multiple in-court hearings.   Such conduct prompted three of the four attorneys appointed to represent Defendant over the course of these proceedings to file one or more motions to withdraw as counsel.[22]   In doing so, each attorney reported a breakdown in communication with Defendant to the point of a total refusal by Defendant to meet with such counsel to discuss the case and/or review discovery materials.   See ECF No. 51; No. 4:17cr111, ECF Nos. 264, 339, 383.   In fact, even now as Defendant proceeds pro se with standby counsel assigned in order to facilitate Defendant's review of protected discovery materials, the Court has before it a motion by Mr. Hallauer to withdraw as standby counsel at Defendant's urging, further jeopardizing Defendant's ability to review all protected discovery materials before trial.   See ECF No. 109 ("The Defendant sent correspondence to Stand By Counsel on October 27, 2020 demanding Stand By Counsel submit a Motion to Withdraw and refusing to meet with or speak with Counsel any further.").   Further, since assuming pro se status, Defendant has persisted in his extensive motion practice,

---

[22] The remaining attorney, Mr. Quick, withdrew shortly after his appointment in light of a conflict.

necessitating the Court's time and consideration.  Consequently, regardless of the complexity of the original case, the attorney conflict, and the current pandemic, Defendant's own conduct has greatly complicated pretrial proceedings such that Defendant likely would not have proceeded to trial without significant delays.

Finally, Defendant has failed to demonstrate any prejudice resulting from the above-described delay.  Indeed, there has been no showing "that any evidence [has been or will be] damaged or lost, that any witnesses [cannot now or will not] be found, or that his case [has been or will be] harmed in any manner by the delay."  United States v. Hopkins, 310 F.3d 145, 150 (4th Cir. 2002).

On balance, the Barker factors do not support a finding of a Sixth Amendment speedy trial violation.  Accordingly, the Court **DENIES** Defendant's Motion with respect to his Sixth Amendment claim.

### C. Unnecessary Delay

Defendant also moves to dismiss the indictment for unnecessary delay under Federal Rule of Criminal Procedure 48(b)(3), which provides that a "court may dismiss an indictment . . . if unnecessary delay occurs in . . . bringing a defendant to trial."  Fed. R. Crim. P. 48(b)(3).  Notably, Rule 48(b) imposes no requirement that the defendant suffer a constitutional

violation to claim relief.  See United States v. Goodson, 204 F.3d 508, 513 (4th Cir. 2000) (observing that Rule 48(b) "not only allows a court to dismiss an indictment on constitutional grounds, but it also restates the court's inherent power to dismiss an indictment for lack of prosecution where the delay is not of a constitutional magnitude" (citation omitted)).  However, the decision to dismiss an indictment on this ground is one committed to the sound discretion of the district court.  United States v. Ball, 438 F. Supp. 3d 656, 662 (E.D. Va. 2020); see also United States v. Butler, 792 F.2d 1528, 1533 (11th Cir. 1986) ("[Rule 48(b)] vests much discretion in the trial court, and dismissal is mandatory only if the defendant's constitutional rights have been violated.").

Although there has been considerable delay in this case, as detailed above, such delay results from a combination of multiple divergent factors, i.e., the complexity of the case, repeated communication issues between Defendant and counsel, and unpredictable events, including a last minute attorney conflict as well as the COVID-19 pandemic and the associated WTRJ COVID-19 outbreak.  The Court does not deem such delay so "unnecessary" as to warrant a dismissal of the indictment under Rule 48(b).  Accordingly, the Court **DENIES** Defendant's Motion for a Rule 48(b)(3) dismissal.

### D. Judicial Estoppel and "No Injured Party"

Finally, Defendant seeks dismissal based on the principle of judicial estoppel and a claim that there "is no injured party." ECF No. 69, at 1-4.  Neither contention has merit.  "Judicial estoppel precludes a party from adopting a position that is inconsistent with a stance taken in prior litigation.  The purpose of the doctrine is to prevent a party from playing fast and loose with the courts, and to protect the essential integrity of the judicial process."  John S. Clark Co. v. Faggert & Frieden, P.C., 65 F.3d 26, 28-29 (4th Cir. 1995) (citation and internal quotation marks omitted).  Defendant fails to demonstrate how judicial estoppel is applicable here as he has not identified any position now asserted by the Government that is somehow inconsistent with one of its previous positions, either in this case or the previous case.  The Motion on that ground is therefore **DENIED**.

With respect to Defendant's claim that the indictment must be dismissed because there is "no injured party," the charged crimes constitute "offenses against the United States" and are thus clearly subject to prosecution.  28 U.S.C. § 547(1); see United States v. Simpson, No. 1:14cr265, 2015 WL 5579561, at *2 (D. Colo. Sept. 22, 2015) (rejecting "no injured party" argument); United States v. Burnett, No. 3:14cr173, 2015 WL 1906026, *2 (M.D. Tenn. Apr. 20, 2015) (same).  Accordingly, the Court **DENIES** the Motion on this ground as well.

### III. CONCLUSION

For the foregoing reasons, Defendant's "Motion to Dismiss No. 2" is **DENIED**.  ECF No. 69.

The Clerk is **DIRECTED** to forward a copy of this Opinion and Order to Defendant, standby counsel, and counsel for the United States.

**IT IS SO ORDERED.**

_____
/s/ Mark S. Davis
Mark S. Davis
CHIEF UNITED STATES DISTRICT JUDGE

Norfolk, Virginia
November   9  , 2020